## Calhoon et al., Appellants, *v.* Neely.

*Oil and gas lease—Abandonment—Forfeiture—Evidence.*

Title under an oil and gas lease is inchoate and for purposes of exploration only until oil or gas is found. If it is not found no estate vests in the lessee, and his title, whatever it is, ends when the unsuccessful search is abandoned. If oil is found, then the right to produce becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract.

Where a lessee under an oil lease for the term of fifteen years goes

upon the leased premises and drills and completes a well which is found to be dry, and thereupon removes from the premises all the machinery used in drilling the well, leaving nothing except an oil tank which was allowed to rot on the ground, and does nothing further and asserts no title until after the expiration of nine years, and until after the premises had been leased to other parties who succeeded in drilling paying wells, the court will assume as a matter of law that the first lease had been abandoned.

Argued Oct. 22, 1901. Appeal, No. 53, Oct. T., 1901, by plaintiffs, from judgment of C. P. Beaver Co., March T., 1900, No. 76, on verdict for defendants in case of S. E. Calhoon et al. v. Frank W. Neely & Co. et al. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Ejectment for land in Economy township. Before Miller, P. J., of the 35th judicial district, specially presiding.

At the trial it appeared that plaintiffs claimed title under an oil and gas lease to the Pleasant Valley Oil & Gas Company, which was as follows:

" This agreement, made and entered into this 28th day of July, 1890, by and between Frederick Mohr, of the county of Beaver and State of Pennsylvania, of the first part, and The Pleasant Valley Oil and Gas Company, of the second part,

" Witnesseth: That the said party of the first part, for the consideration of the covenants and agreements hereinafter mentioned, has granted, demised and let unto the party of the second part, their heirs and assigns, for the purpose and with the exclusive right of drilling and operating for petroleum and gas.

" All of that certain tract of land situate in Economy Township, Beaver county, and State of Pennsylvania, bounded and described as follows, to-wit: On the north by William Brown heirs; on the east by Sheib and McAlys heirs; on the south by Mr. William Miller or Bock heirs; on the west by lands of Andrew Moore; containing eighty-six acres, be the same more or less.

" The party of the second part, his heirs or assigns, to have and hold the above described premises during the term of fifteen years from the date hereof, and as much longer as oil and gas is found in paying quantities thereon.

" The said party of the second part, in consideration of the said grant and demise, agree to give the party of the first part the full equal one-eighth part of all the petroleum obtained or produced on the premises herein leased, and to deliver the same in tank or pipe line to the credit of the party of the first part.

" It is further agreed that if gas is found in paying quantities the consideration, in full, to the party of the first part, instead of the one-eighth royalty, shall be Five Hundred Dollars per annum, for the gas from each well, when marketed; and gas free of cost for household use on the premises.

" The party of the first part grant the further privilege to the party of the second part of using sufficient water from the premises herein leased necessary to the operation thereon; the right of way over said premises, together with the right to lay pipe to convey oil or gas from this or other property of the party of the second part; the right to remove all machinery or fixtures placed on said premises by the party of the second part.

" The test well shall be located in the hollows, or at such places as do no unnecessary damages; and any damage done to growing crops by the operation of the second party shall be paid for by the holders of this lease. Operation to be commenced on said above described premises thirty days from the date hereof, and prosecuted with due diligence to completion; and no right of action shall after such failure accrue to either party on account of the breach of any covenant herein contained.

" It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors and assigns."

The evidence of abandonment is set forth in the opinion of the Supreme Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Walter G. Crawford*, with him *James H. Cunningham* and *Frank H. Laird*, for appellants.—The question of abandonment as against the lessees, could not arise in this lease after the test well had been drilled by them, without declaring the time fif-

teen years nugatory. This could not have been the intention of the parties, for if oil had been found in the test well then so long as it was produced the lease would last, and the fifteen years must have been intended between the parties for another purpose than for the production of oil when found. It was the time given to the lessees to find the oil or gas: Colgan v. The Forest Oil Company, 194 Pa. 234; Marshall v. Forest Oil Co., 198 Pa. 83; Cincinnati v. Gas Light & Coke Co., 53 Ohio, 278; 41 N. E. Rep. 239.

_A. P. Marshall_, for appellee.—The title is inchoate and for purposes of exploration only until oil is found. If it is not found, no estate vests in the lessee, and his title, whatever it is, ends when the unsuccessful search is abandoned: Venture Oil Co. v. Fretts, 152 Pa. 451; Duffield v. Hue, 129 Pa. 94; Aye v. Phila. Company, 193 Pa. 451.

OPINION BY MR. JUSTICE BROWN, January 6, 1902:

Plaintiffs and defendants both claim title to the premises in controversy as the lessees of Frederick Mohr. The undisputed facts in the case are, that the lease under which plaintiffs claim was made on July 28, 1890, to the Pleasant Valley Oil and Gas Company for oil and gas purposes, and embraced eighty-six acres of land in Economy township, Beaver county; that it was for a term of fifteen years, and as much longer as oil and gas might be found in paying quantities; that the appellants became the assignees of the lease, and within sixty days from its execution, erected a rig and drilled a test well upon the premises, but obtained no oil; that as soon as the well was completed and found to be dry, they removed from the premises all the machinery used in drilling the well, leaving nothing except an oil tank, which was allowed to rot on the ground; that from the time they so left the premises, they did nothing and asserted no title until Mohr, on June 5, 1899, nearly nine years after the date of the lease under which they claim, leased thirty-six acres of the same land to Neely, for oil and gas purposes, and he with the other appellees as assignees of interests in this second lease, went into possession of the premises, commenced operations upon the land and succeeded in drilling paying wells. Under this state of facts the jury were instructed to find for the defendants.

On the part of the appellants it is urged that Mohr made the second lease because he thought the first one was but for five years, and that as it was really for fifteen years, the title of the first lessees is good for that period. It is immaterial, however, for what term the lease was made, and it must be regarded as written for "the term of fifteen years from the date hereof, and as much longer as oil and gas is found in paying quantities;" for the right of the lessees was to explore for oil and gas and ascertain whether both or either were on the leased land. "The right of the lessee or grantee under its provisions was to explore for, and determine the existence of oil or gas under the farm. If none was found, the rights of the grantee ceased when the explorations were finished. If oil or gas was found in paying quantity, then the contract took effect as an oil lease, and the lessee had a right, and was under a contract obligation to operate the land for the production of oil during the time and upon the terms fixed in the lease. . . . A vested title cannot ordinarily be lost by abandonment in a less time than that fixed by the statute of limitations, unless there is satisfactory proof of an intention to abandon. An oil lease stands on quite different ground. The title is inchoate and for purposes of exploration only, until oil is found. If it is not found no estate vests in the lessee, and his title, whatever it.is, ends when the unsuccessful search is abandoned. If oil is found then the right to produce becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract:" Venture Oil Co. v. Fretts, 152 Pa. 451. The evidence of appellants' abandonment of the premises is clear. It is unequivocally testified to by one of the plaintiffs and Mohr, the lessor. The former testified as follows: "Q. You may state, generally, Mr. Mahoney, what you did in pursuance of the lease, on the premises? A. Went right in and took possession. We put in a rig and drilled the well, but we didn't get any oil. Then I moved my property off. Q. Had you some part of the property? A. I owned everything except the tank. The tank was the property of the company . . . . Q. That was left there? A. Yes, sir." Mohr says: "Q. How long after they got the lease was it before they put the well down? A. It wasn't very long. As quick as they could get it—I suppose a couple of months

—soon afterwards at least.    Q.  After they completed that well on your place what did they do?    A.  Took their fixtures all away and everything that belonged to them excepting an old tank that they left to rot on the ground.  Took everything else away and never done nothing more.  Q.  Did you ever have any conversation with any of them after that?    A.  Never a word, never." The suspension of operations, abandonment of the search for oil and gas, and relinquishment of the premises for nine years were an unqualified surrender by the appellants of whatever rights they had to perfect their inchoate title. It was their announcement to the lessor that they were done, and that he could give exploring privileges to others.  This he did, with satisfactory results, and but for them, these appellants would probably not have been heard from.

Whether there was an abandonment here, as in all similar cases, was a question of intention to be determined in the light of the conduct of the lessees.  Turning to the testimony of one of them, already referred to, no other construction can be put upon their conduct than that they had abandoned the premises as a fruitless field, and intended to do so.  No explanation is even attempted of their cessation of operations for nine years until at last they were willing to become active at the sight of oil flowing from wells drilled by others.  The learned trial judge could have given no other instructions to the jury than that their finding must be for the defendants.  In doing so he followed what we said in Aye v. Phila. Co., 193 Pa. 451: " Abandonment is a question of fact to be determined by the acts and intentions of the parties.  An unexplained cessation of operations for the period involved in this case gives rise to a fair presumption of abandonment and standing alone and admitted would justify the court in declaring an abandonment as matter of law."

The following clause in appellants' lease has been called to our attention as sustaining their right to recover: " Operation to be commenced on said above described premises thirty days from the date hereof, and prosecuted with due diligence to completion; and no right of action shall after such failure accrue to either party on account of the breach of any covenant herein contained; " but this has no application to the single question before us, which is not one involving any right of

action which Mohr or his later lessees claim to have against the lessees in the lease of July 28, 1890. It is not a question of forfeiture by the appellants. It is one of simple abandonment by them of the premises leased to them, and of all their rights under the lease, and for which abandonment under the clause referred to Mohr has no right of action against them. He did however have a right to lease his abandoned land to others, and the judgment in this case, that those to whom he did lease cannot be ousted by these appellants, is affirmed.