428

## Carlson v. Haut

*H. Robert Hampson,* for plaintiff.
*William R. Mervine,* for defendant.

WOLFE, *P. J.,* February 13, 1975 — This action requests the court to declare defendants have forfeited their rights in and to a certain oil and gas lease agreement made and entered into June 15, 1963, between Ephraim A. Carlson and L. P. Melat and which, by the demise of the grantor, Ephraim A. Carlson, and by assignment of the grantees, Richard and Robert Jordan, have become vested in plaintiffs and defendant, Edward Haut.

The lease contains 25 acres and, upon a standard form customarily used in this county, grants unto the lessee the premises described therein for, "the sole and only purpose and with exclusive

right of mining and operating thereon for oil and gas . . . and shall be in force for the term of five months from the date thereof and as long thereafter as oil or gas is produced in paying quantities . . ." The lessee agreed to deliver to the credit of the lessor, free of cost, a one-eighth part of the oil produced.

It is plaintiffs' position that defendant has failed and neglected to produce the lease in paying quantities since October 1969 despite the fact six wells were drilled by defendant or defendant's predecessor in title.

Defendant does not dispute the nonproduction of the lease but seeks to justify his inactivity on his financial reverses when the lease was subjected to a lien of creditors and was ostensibly sold with two other leases owned by plaintiffs at a sheriff's sale, and it was not until October 1972 defendant learned this lease was not, in fact, sold when he was informed of the nonsale of the lease by his banker.

It is undisputed there was no production from October 1969 and it is undisputed defendant did nothing to activate the lease after it was shut down on May 19, 1970, until October 1972, when defendant made some effort to have the electric turned on and started negotiations with plaintiffs on or about April 1973 to start pumping the wells. It is defendant's position he did not intend to abandon the lease but the evidence fairly concludes approximately one year and seven months expired before defendant ascertained the lease was not sold at the sheriff's sale and that he generally did not attend to the wells in a workmanlike or businesslike manner.

The posture of this case is not so much that the

lease could not be produced in paying quantities but, rather, defendant failed to produce it at all since October 1969.

It has been generally held in most jurisdictions the term "paying quantities" as used in this connection means such quantities as would yield to the lessee a reasonable profit after deducting the entire cost for drilling, equipping and operating the wells. It does not mean the amount of royalty paid to the lessor as is commonly, and mistakenly, understood.

In Pennsylvania the latest pronouncement we can find in this respect is Brown v. Haight, 435 Pa. 12, 255 A. 2d 508 (1969), wherein the court interpreting the habendum clause of a lease of similar words stated:

" 'To have and to hold the said lands and rights unto the Grantee . . . from the date hereof, and *as much longer as* . . . oil or gas is found . . . in paying quantities . . . conveys a fee simple grant and [w]ords such as 'as much longer as' or 'so long as" are traditionally considered words connoting *a special limitation* rather than a condition subsequent. Furthermore, policy considerations indicate that the habendum clause should be interpreted as a special limitation and not a condition subsequent. In this case the grantor's sole consideration other than one dollar was the receipt of royalty payments. It is inequitable that the grantor's lands should remain encumbered if he does not receive royalty payments in return. Furthermore, there is no justifiable reason why the grantor should have to incur legal expenses evicting the grantee for his failure to produce gas and oil in paying quantities. We conclude, therefore, that the grant of the oil and gas and

the land under this deed was subject to a special limitation and not a condition subsequent." (Emphasis supplied.)

See also White v. Young, 409 Pa. 562, 568, 186 A. 2d 919 (1963); Clark v. Wright, 311 Pa. 69, 76, 166 Atl. 775 (1933);and Cassell v. Crothers, 193 Pa. 359, 365, 44 Atl. 446 (1899); holding that at such time a condition becomes applicable and the deed is terminated automatically the lessee remains on the property under a tenancy at will.

Nothing in the evidence points to an extension granted by the lessor to the lessee for his failure to operate the lease nor did the lessor receive any additional consideration for any extension of failure to produce nor did the lessor in any way consent to the non-operation of the lease or in any way mislead the lessee that failure to operate was consensual.

Defendant argues we cannot declare a forfeiture under these circumstances because there is no evidence defendant intended to abandon the lease. We can accept defendant had no intention to abandon the lease, however, we do not think the results turns on the defendant's intent in this case. Defendant was unable to produce the lease because of his financial problems and (through his own neglect to pursue the lease with due diligence) was of the opinion it had been sold by his creditors. Obviously defendant had resigned himself that he had lost the lease before it was disclosed to him to the contrary. The only issue here is to determine if defendant failed to produce the lease "in paying quantities" and by his neglect to do so there has been an automatic forfeiture despite the fact the lessors did not declare a forfeiture.

Defendant relies on Stock v. Inter, 57 D. & C. 2d

531 (1972), for the proposition that equity abhors a forfeiture and argues the factual situation is to be equated with the current case. We cannot agree the principle set forth in Stock applies here. In Stock the court refused to declare a forfeiture not on the grounds the lessee neglected to produce the wells in paying quantities but rather the lessor had not complained about the small amount of production of the wells over a period of eight years and had permitted the lessee to "flow the wells" rather than equipping them with pumping jacks to produce more oil over this same period of time. The court compelled the lessor to equip the wells with pumping jacks and was granted six months to either consecutively or concurrently produce the wells or they would be terminated in accordance with the terms of the lease.

Defendant relies on McKean Natural Gas Co. v. Wolcott, 254 Pa. 323, 98 Atl. 955 (1916). Again, the facts in that case are not applicable here. The only issue resolved in McKean Natural Gas Co. was whether the lessee had tendered the rentals to the lessor in time to save a forfeiture of the lease. The issue did not, in any respect, turn upon the lessee's failure to produce the wells in paying quantities.

Finally, defendant attempts to distinguish White v. Young, 409 Pa. 562 (1963), cited by plaintiff as controlling by taking the position the court held that a written notification from the lessor to the lessee effectuated the termination and since there was no written notification from the Plaintiffs to the defendant in the case the principle cited therein is not applicable. With this we disagree. There is nothing in White to conclude the lessor was required to give written notification to

the lessee that lessor considered the lease termi-
nated. Indeed, there is nothing in the lease under
review in this case that requires the lessor to give
written notice to the lessee the lessor considers the
lease terminated. Here, as was stated in White v.
Young, supra, "the facts are uncontroverted that
neither oil nor gas was found in paying quantities,
nor royalties paid for over three years after the ex-
piration of the fixed ten-year period of the lease.
The sole reason the lessor entered into the lease
was to receive royalties. It would be inequitable to
encumber the land of the lessor indefinitely be-
cause of the faint hope that oil or gas might be
extractable sometime in the future."

In essence, defendant seeks a declaration to
compel plaintiffs to overlook his failure to perform
and to grant him a second opportunity to produce
the lease. We are aware that equity will not permit
a forfeiture for technical reasons but we cannot
agree this principle here is applicable. For a long
period of time defendant made no effort what-
soever to save his lease and, as a fact, had consid-
ered it terminated as a matter of law.

For the foregoing reasons we enter the following

## ORDER

And now, February 13, 1975, the oil and gas
lease agreement made the 15th day of June, 1963
between Ephraim A. Carlson, widower, as lessor,
and L. P. Melat as lessee, and recorded in Deed
Book 328 at page 478 and as assigned by the
said L. P. Melat unto the B. M. T. Oil Com-
pany of Chandlers Valley, said assignment being
recorded in Deed Book 328, page 480, and as
assigned between B. M. T. Oil Company to

Edward Haut, Richard Jordan and Robert Jordan, as said assignment is recorded in Deed Book 335, page 328 is terminated and the said lessees of said lease, their heirs, executors, administrators and assigns are forever barred from asserting any right, lien, title or interest in the said lease and the Prothonotary is directed to cause to be filed a certified copy of this order with the recorder of deeds and the recorder is directed to record the within order.

Costs to be paid by defendant, Edward Haut.