**T.W. PHILLIPS GAS AND OIL CO. and PC Exploration, Inc., Appellees**

v.

**Ann JEDLICKA, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 17, 2008.

Filed Dec. 29, 2008.

Stephen J. Del Sole, Pittsburgh, for appellant.

Walter A. Bunt, Jr., Pittsburgh, for appellees.

BEFORE: FORD ELLIOTT, P.J., ORIE MELVIN and SHOGAN, JJ.

OPINION BY SHOGAN, J.:

¶ 1 Ann Jedlicka ("Jedlicka"), defendant in the trial court, appeals from the judgment entered on October 19, 2007, in the Indiana County Court of Common Pleas in favor of T.W. Phillips Gas and Oil Company and PC Exploration, Incorporated, the plaintiffs in the trial court. After careful review of the record and applicable law, we affirm.

¶ 2 The trial court set forth the relevant facts and procedural history of this matter as follows:

> A non-jury trial was held in this matter on April 16, 2007. . . . The Plaintiffs initiated this declaratory judgment action to obtain declarations as to the respective rights and duties of the parties regarding the operations, explorations, and production of oil and natural gas on a tract of land known as the Jedlicka tract pursuant to an oil and gas lease known as the Findley lease.

### FACTS

> The parties stipulated to the following facts. Well No. 6 was drilled in 1986, Wells No. 7, 8 and 9 were drilled in 2004, and Well No. 14 was drilled in 2005. All of those wells produced in paying quantities from the time they were drilled. The Defendant has been paid royalties to the present day in accordance with the lease. Lastly, the parties agreed that the conditions set forth in the Findley lease that four wells should be drilled has been satisfied and at issue is the phrase "produced in paying quantities."

> The Jedlicka tract is a parcel of land located in North Mahoning Township consisting of approximately 63 acres.[1] Title to the tract was conveyed by deed dated October 15, 1979, from James and Anna Jedlicka, widow, to Anna Jedlicka and Ann Jedlicka. The Jedlicka tract is

part of a larger tract of land consisting of approximately 163 acres, title to which became vested in Samuel Findley and David Findley by deed dated February 24, 1925.

By instrument dated July 2, 1928, D.L. Findley and S.W. Findley granted and conveyed to T.W. Phillips Gas and Oil Company an oil and gas lease covering approximately 163 acres. The Findley property was later subdivided and sold. The Jedlicka tract is one of the parcels subject to the Findley lease. The Findley lease contains the following habendum clause: "To have and to hold the above-described premises for the sole and only purpose of drilling and operating for oil and gas with the exclusive right to operate for same for the term of two (2) years, and as long thereafter as oil or gas is produced in paying quantities, or operations for oil or gas are being conducted thereon, including the right to drill other wells, ..." The lease is a pressure lease which established royalty payments to the lessor based upon the pressure of the well.

Pursuant to the lease, T.W. Phillips drilled four gas wells in 1929, Wells No. 1–4. Well No. 4 is situated on the Jedlicka tract. Well No. 2 was temporarily abandoned in 1955 and Well No. 4 was temporarily abandoned in 1953. All four wells were fractured in 1967. Wells No. 1–4 were assigned to PC Exploration, Inc. by assignment dated June 15, 2004 and recorded in the Indiana County Recorder's Office. PC Exploration then drilled Wells No. 6–9 and has plans to drill Nos. 10–13 on the Jedlicka tract.

The Plaintiffs assert that the Findley lease remains valid and has been held open by production. Plaintiffs argue that at all times at least two wells have produced in paying quantities under the lease. Pursuant to the lease, royalties have been paid and free gas has been provided to the Defendant. The Defendant argues that the Findley Lease as it applies to the Jedlicka tract has terminated.

## DISCUSSION

The Defendant filed a Motion in Limine to Exclude Evidence of Post–1974 Expenses and Revenue. The Plaintiffs do not have any depletion schedules for Wells No. 1–4 after 1974. Therefore, the Defendant argues that the Plaintiffs should be precluded from introducing any evidence of operating expenses or revenues for the Wells 1–4 after 1974. As the Court ruled at trial, the Motion is denied. Although the depletion records don't exist, the Plaintiffs were permitted to introduce other evidence of expenses, revenue, or production. The Defendant's argument was a challenge to the sufficiency of the evidence and thus the Motion was denied.

The Plaintiffs filed a Motion in Limine arguing that the Defendant's defenses should be dismissed or that the Defendant should be precluded from presenting all facts, evidence and testimony regarding or related to the production or operation of wells on the Findley Tract prior to 1988. The Defendant filed an action in 1988 in the Indiana Court of Common Pleas. The action was commenced by Writ of Summons but a Complaint was never filed. The action was dismissed with prejudice in accordance with Pa.R.J.A.1901 which terminates inactive cases. Plaintiffs argue that in the action the Defendant was objecting to the validity of the same lease at issue herein. The Court heard testimony on this Motion which established that the lease was at issue in the 1988 action. However, because a Complaint was never filed and the testimony not sufficient-

ly specific, the Court cannot make the determination that the issues in the actions are identical or that the Defendant is attempting to argue the same claims. The Plaintiffs' Motion in Limine is denied....

The remaining issue is centered on the meaning of the phrase used to denote the duration of the lease, "gas is produced in paying quantities." The Plaintiffs argue that the lease remains valid. Plaintiffs assert that the wells on the Findley tract have produced gas in paying quantities because they have continued to pay a profit over operating expenses. Plaintiffs assert they have operated the wells in a good faith effort to make a profit.

The meaning of the phrase "found or produced in paying quantities" was examined by our Supreme Court in 1899. The Findley lease was executed in 1928. In *Young v. Forest Oil Co.,* [194 Pa. 243] 45 A. 121, 122–123 (Pa.1899), the Court found that the lessee was entitled to follow his own judgment when exercised in good faith. The Court held that the phrase "found or produced in paying quantities" means paying quantities to the lessee or operator. "[I]f a well, being down, pays a profit, even a small one, over the operating expenses, it is producing in 'paying quantities,' though it may never repay its cost, and the operation as a whole may result in a loss. Few wells, except the very largest, repay cost under a considerable time; many never do; but that is no reason why the first loss should not be reduced by profits, however small, in continuing to operate. The phrase 'paying quantities,' therefore, is to be construed with reference to the operator, and by his judgment when exercised in good faith." *Id.*

The Defendants argue that the lease did not make a profit in 1959 and thus it terminated. The evidence indicates that in 1959, a loss of approximately $40 was suffered. However, the lessees continued efforts in production after 1959 and the Defendants continued to receive royalty payments per the lease for more than thirty years without asserting that the lease had expired. The royalties were calculated as described in the pressure lease, not based upon a ⅛ royalty of all gas removed. Therefore, the Defendants have received the benefit of their bargain since the inception of the lease in 1928. The evidence indicates that the lessees tried to have the Defendants sign a lease modification agreement which would have changed the royalty payments to a ⅛ royalty but the Defendants have declined.

The Defendants argue that the test adopted by the Supreme Court in *Young* is an older subjective test and some other state and federal courts are interpreting gas leases in a more objective manner using a computation of production receipts minus royalty minus expenses including marketing, labor, trucking, repair, taxes, fees and other expenses. *E.g., Reese Ents., Inc. v. Lawson,* [220 Kan. 300] 553 P.2d 885, 897 (Kan.1976). The rationale includes the view that the lessees should not be allowed to hold land indefinitely for purely speculative purposes. This objective approach has not been expressly adopted by Pennsylvania courts.

The Court finds that based upon all of the testimony and other evidence presented, the rationale utilized in support of a completely objective test is not applicable herein. The lease is a pressure lease, not a 1/8 royalty lease. *See T.W. Phillips Gas and Oil Company v. Komar,* 424 Pa. 322, 227 A.2d 163 (1967) noting as a consideration the basis of the lessor's remuneration. The evidence in-

dicates that the lessees were operating the wells in good faith and there was no evidence that they were holding the land for purely speculative purposes. This Court, sitting in Equity, cannot hold that because the wells suffered a de minimis loss one year more than fifty years ago the lease had then expired.

### CONCLUSIONS OF LAW

The Plaintiffs' oil and gas leasehold title pertaining to the Jedlicka Tract is held by production.

The oil and gas lease did not expire in 1959 when a loss was suffered.

The oil and gas lease remains valid.

The Plaintiffs have the leasehold right to drill and operate the Findley No. 10, No. 11, No. 12, and No. 13 Wells upon the Jedlicka tract.

---

1. As the result of unrelated litigation, the Jedlicka tract now consists of approximately 70 acres.

Trial Court Opinion, 7/16/07, at 1–6.

¶ 3 Jedlicka filed post-trial motions that were denied in an order entered on October 11, 2007. Thereafter, judgment was entered in favor of T.W. Phillips Gas and Oil Company and PC Exploration, Incorporated, on October 19, 2007. This timely appeal follows.

¶ 4 On appeal, Jedlicka raises two issues for our consideration:

I. Does a trial court err when it applies a subjective rather than objective standard to its determination of whether an oil or gas lease has produced in paying quantities?

II. Does a trial court err when it determines that an oil or gas lease has pro-duced in paying quantities where there is no competent evidence of expenses?

Jedlicka's Brief at 5.

¶ 5 Our standard of review is as follows:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

*Amerikohl Mining Co., Inc. v. Peoples Natural Gas Co.*, 860 A.2d 547, 549–550 (Pa.Super.2004) (internal citations and quotation marks omitted), *appeal denied*, 583 Pa. 667, 876 A.2d 392 (2005).

¶ 6 Here, Jedlicka first argues that the trial court erred in applying a subjective test, as opposed to an objective test, in determining whether the lease produced "in paying quantities." We disagree.

¶ 7 As noted above, the Lease at issue here permitted T.W. Phillips Gas and Oil Company and PC Exploration, Incorporated to use Jedlicka's land for drilling and operating oil and gas wells for as long as oil or gas is produced in paying quantities. Jedlicka claims that the wells did not produce in paying quantities. Rather the wells produced minimally, and that in 1959, the lease as a whole incurred a loss. Jedlicka's Brief at 11. Therefore, Jedlicka claims that the Lease terminated and turned into a tenancy at will.

¶ 8 In *Young v. Forest Oil Co.*, 194 Pa. 243, 45 A. 121 (1899), the Pennsylvania Supreme Court explained:

The phrase 'found or produced in paying quantities' means paying quantities to the lessee or operator. If oil has not been found and the prospects are not such that the lessee is willing to incur the expense of a well (or a subsequent or second well, as the case may be), the stipulated condition for the termination of the lease has occurred. So, also, if oil has been found, but no longer pays the expenses of production. But if a well, being down, pays a profit,-even a small one, over the operating expenses,-it is producing in 'paying quantities,' though it may never repay its cost, and the operation as a whole may result in a loss. Few wells, except the very largest, repay cost under a considerable time; many never do; but that is no reason why the first loss should not be reduced by profits, however small, in continuing to operate. The phrase 'paying quantities,' therefore, is to be construed with reference to the operator, and by his judgment when exercised in good faith.

*Id.*, 194 Pa. at 250–251, 45 A. at 122–123.

¶ 9 Nevertheless, Jedlicka argues that there is an objective test for determining the existence of paying quantities. Jedlicka, quite correctly, notes that there is a dearth of authority in Pennsylvania for what constitutes paying quantities since the decision in *Young*. Jedlicka directs this Court's attention to *Carlson v. Haut*, 1 Pa. D. & C.3d 428 (Warren Co.1975), a case Jedlicka argues illustrates the trial court's use of an objective test for determining paying quantities. Jedlicka quotes the trial court in *Carlson* where it stated:

It has been generally held in most jurisdictions the term 'paying quantities' as used in this connection means such quantities as would yield to the lessee a reasonable profit after deducting the entire cost for drilling, equipping and operating the wells. It does not mean the amount of royalty paid to the lessor as is commonly, and mistakenly, understood.

Jedlicka's Brief at 14 (quoting *Carlson*, 1 Pa. D. & C.3d at 430).

¶ 10 However, in reaching its determination that the lessee failed to utilize the demised premises to produce paying quantities, the court in *Carlson* stated:

The sole reason the lessor entered into the lease was to receive royalties. It would be inequitable to encumber the land of the lessor indefinitely because of the faint hope that oil or gas might be extractable sometime in the future.

In essence, [lessee] seeks a declaration to compel [lessor] to overlook his failure to perform and to grant him a second opportunity to produce the lease. We are aware that equity will not permit a forfeiture for technical reasons but we cannot agree this principle here is applicable. For a long period of time [lessee] made no effort whatsoever to save his lease and, as a fact, had considered it terminated as a matter of law.

*Carlson*, 1 Pa. D. & C.3d at 433. We fail to see how Jedlicka's interpretation of the *Carlson* case creates an objective standard. Moreover, as noted above, *Carlson* is a decision from the court of common pleas, and is in no way binding on this Court. However, and despite its age, *Young* is a decision from the Pennsylvania Supreme Court, and as an intermediate appellate court, we are bound to follow its holding. *Hoffa v. Bimes*, 954 A.2d 1241, 1249 (Pa.Super.2008).[1]

---

1. Jedlicka cites to decisions from various state and federal courts that purport to establish an

¶ 11 As set forth in the quoted material from *Young*, the good faith of the lessee is a necessary determination. As Jedlicka is the party seeking to terminate the lease, it is Jedlicka who bears the burden of establishing a lack of good faith. *Jefferson County Gas Co. v. United Natural Gas Co.*, 247 Pa. 283, 285–286, 93 A. 340, 341 (1915) (holding that the burden of establishing a termination of a lease is on the party asserting the termination); *see also, Easton Theatres, Inc. v. Wells Fargo Land and Mortgage Co., Inc.*, 265 Pa.Super. 334, 401 A.2d 1333, 1340 (1979) (holding that party claiming termination of the lease bears the burden of showing that breaches of the lease were so substantial as to justify it in regarding the whole transaction at an end). Here, while the lease operated at a loss in 1959, Jedlicka has not established any evidence that T.W. Phillips Gas and Oil Company and PC Exploration, Incorporated, acted in bad faith. Jedlicka has, therefore, failed to carry her burden. Accordingly, we conclude that the trial court committed no error, and Jedlicka is entitled to no relief on this claim.

¶ 12 Finally, Jedlicka argues that the trial court erred when it determined that the lease produced in paying quantities because there was insufficient competent evidence of expenses. We conclude that we need not address this issue at length. As discussed above, the burden of proving forfeiture of a lease is on the party asserting the forfeiture. *Jefferson County Gas Co.*, 247 Pa. at 285–286, 93 A. at 341. Here, Jedlicka is the party asserting forfeiture, and therefore, it was her burden to establish that T.W. Phillips Gas and Oil Company and PC Exploration, Incorporated, failed to establish their expenses and

objective standard for determining whether a lease is producing in paying quantities. However, as we have a decision on this issue from

stood in breach of the lease. Upon reviewing this case in light of the applicable burden, we conclude that the record aptly supports the trial court's determination on this issue.

¶ 13 For the reasons set forth above, Jedlicka is entitled to no relief. Accordingly, the judgment entered in this matter is hereby affirmed.

¶ 14 Judgment affirmed.

our Supreme Court, we are bound by its holding.