Ronald McCAUSLAND, Appellant

v.

Robert N. WAGNER, Estate of Homer
M. Wagner, and Delores Wagner,
Appellees.

Superior Court of Pennsylvania.

Argued June 25, 2013.
Filed Sept. 20, 2013.

Jason R. Lewis, Kittaning, for appellant.

John P. Edgar, Pittsburgh, for Estate of Wagner, appellee.

Lisa M. Schonbeck, Pittsburgh, for Wagner, appellee.

BEFORE: SHOGAN, LAZARUS and MUSMANNO, JJ.

OPINION BY SHOGAN, J.:

Appellant, Ronald McCausland ("Ronald"), appeals from the order of July 23, 2012, which granted the motion for summary judgment of Appellee, Robert N. Wagner ("Robert").[1] We affirm.

---

1. We note that the caption in this matter fails to make a distinction among the various Appellees. As will be mentioned in this Opinion, this case involves a claim by Ronald that an oil and gas lease entered into in 1964 was rendered null and void due to Robert's failure to make royalty payments to Ronald. The remaining Appellees (the Estate of Homer M. Wagner and Delores Wagner) received "working interests" in the wells located on the McCausland Property. The remaining Appellees ask this Court to affirm the determination of the trial court. *See* Brief for Appellees, Estate of Homer M. Wagner and Delores Wagner, at 5.

The trial court summarized the protracted history of this case as follows:

Elmer McCausland, [Ronald's] predecessor in interest, owned approximately 65 acres of land in Cowanshannock Township, Armstrong County, Pennsylvania (the McCausland Property).

On or about February 4, 1964, Elmer McCausland, as lessor, entered into an oil and gas lease (the McCausland Lease) with Frank Wagner, Homer [M.] Wagner and Robert N. Wagner (the Wagners). Frank N. Wagner was the father of Homer [M.] Wagner and Robert N. Wagner.

The McCausland Lease read in pertinent part as follows: "It is further understood and agreed by and between the parties hereto **that a failure to make any one of such payments,** or to complete one well on the premises, **shall render this lease null and void,** and the same shall be fully ended and determined by and between the parties, **and the party of the first part [McCausland] shall have no right, nor right of action in law and equity against the party of the second part [the Wagners], the recovery of any rent, damages or otherwise thereafter."** (emphasis added).

Pursuant to the McCausland Lease, Elmer McCausland was entitled to receive royalty payments equal to 1/16 of the production of natural gas from the McCausland Property. The McCausland Lease was later orally-modified to provide Elmer McCausland with a 1/8 royalty on the production of natural gas from the McCausland Property.

On September 29, 1965, the Wagners, as vendors, entered into Gas Purchase Agreement No. 6078 with Equitable Gas Company, as buyer, pursuant to which Equitable agreed to buy all gas produced under the McCausland Lease for the life of the lease and or wells for 25 cents per thousand cubic feet.

Paragraph 14 of GPC No. 6078 stated as follows: "All payments that may become due under and by virtue of the terms of this contract may be made, without liability on the part of [Equitable] to see to the application thereof, by check or voucher to the order of Robert N. Wagner, Agent. . . ."

On December 30, 1965, Elmer McCausland conveyed the McCausland Property to Walter McCausland and Bertha McCausland. Walter and Bertha McCausland in turn conveyed the McCausland Property to plaintiff Ronald McCausland on April 29, 1979.

On or about February 1, 1986, Homer M. Wagner and Robert N. Wagner entered into a Joint Operating Agreement (JOA) with respect to the McCausland Lease. This JOA provided each man with a 50% interest in the McCausland Lease.

On February 5, 1990, Homer M. Wagner and Robert N. Wagner executed an assignment in which they assigned each other an undivided 50% working interest in the McCausland Lease (the Assignment Agreement). The Assignment Agreement stated that it "shall extend to each assignee, their heirs, successors and assigns." By this time, Frank N. Wagner had died, leaving all his interest to his two sons, Homer and Robert.

The McCausland Lease, GPC No. 6078, the JOA and all applicable modifications cover three wells on the McCausland Property (the McCausland Wells). At least one of the wells is still producing marketable quantities of natural gas.

In exchange for the gas produced by the McCausland Wells during part of 2005 and part of 2006, Equitable made six payments payable to Robert Wagner, Agent, and the checks were cashed by Robert N. Wagner as agent for all par-

ties with an interest in the McCausland Lease. These checks were cashed in November and December of 2005 and in January, February, March and April of 2006. Robert N. Wagner did not pay the parties in interest, including Ronald McCausland, their full shares of these checks which he had cashed. The majority of the money simply lay in a checking account. (See Stipulation of Facts, ¶ 13.)

From February of 2008 until October of 2010, Equitable issued checks to Robert N. Wagner, Agent, in exchange for the gas produced by the McCausland Wells, but Wagner never cashed these checks nor distributed the proceeds thereof. (*Id.* at ¶ 14.)

Ronald McCausland initiated the instant action with the filing of a complaint on July 27, 2009 in which he alleged that he had not received a royalty payment for natural gas produced from the McCausland Wells since November of 2005. In the complaint, McCausland alleged that Robert N. Wagner, the Estate of Homer M. Wagner and Equitable had breached the McCausland Lease and GPC No. 6078 by failing to make the required natural gas royalty payments to him. Plaintiff sought an award of monetary damages and also a declaration that the McCausland Lease and GPC No. 6078 were null and void.

On January 15, 2009, Equitable filed an answer, new matter and cross-claim pursuant to Pa.R.C.P. 1031.1 in which it averred that it could not have breached the McCausland Lease since it was not a party to it, and that it did not breach GPC No. 6078 because, as required by the explicit terms of GPC No. 6078, all payments for natural gas purchased under GPC No. 6078 were made to Robert N. Wagner as agent.

On January 20, 2010, Equitable filed a petition for interpleader in this case pursuant to Pa.R.C.P. 2302. Equitable sought an order (1) permitting it to pay into court the amount of all checks which Robert N. Wagner as agent failed and/or refused to cash beginning in February 2008 for natural gas purchased under GPC Nos. 6078, 6056 and 7026, which amount was approximately $280,000, (2) permitting it to pay into court all future payments for natural gas purchased under GPC Nos. 6078, 6056 and 7026, and (3) discharging it from all liability with respect to the monies it pays into court.

On September 16, 2010, Robert N. Wagner's attorney filed a petition for the appointment of a guardian ad litem in the litigation. On October 15, 2010, the Court entered an Order appointing Kevin S. Schrecengost as guardian ad litem for Robert N. Wagner.

An evidentiary hearing on the interpleader petition was scheduled. However, prior to the evidentiary hearing, Equitable, McCausland, various other claimants and Schrecengost reached a comprehensive settlement agreement.

On October 26, 2010, this Court issued an Order approving the settlement with respect to Equitable's interpleader petition, pursuant to which Robert N. Wagner, through Schrecengost, agreed to make all outstanding royalty payments to McCausland and others, as well as outstanding working interest payments to the working interest holders, plus interest at the rate of 3.5%.

On December 21, 2010 the parties entered a stipulated Order of Court and settlement agreement which memorialized the terms of the settlement reached on October 26, 2010. McCausland signed the agreement.

In pertinent part, the agreement states: "*To Ronald McCausland:* the total sum of $37,258.94, **representing the royalties owed to him on the gross**

production **amounts paid on the McCausland Wells.** This amount includes interest at the rate of 3.5% per annum, compounded monthly [emphasis added]."

The settlement agreement also states, "Exception from the Releases—**Ronald McCausland specifically reserves the right and ability to seek a judicial declaration that the McCausland Lease is null and void.** The releases contained in Paragraphs 9 and 10 above **do not release any claim by Ronald McCausland that the McCausland Lease is null and void.**" Settlement Agreement, ¶ 11. Paragraph 12 of the settlement agreement states, "Should a court of competent jurisdiction determine that the McCausland Lease is null and void ..., GPC No. 6078 shall automatically terminate and become null and void."

On January 6, 2011, pursuant to the October 26, 2010 Order and settlement agreement, Robert N. Wagner, through Schrecengost, issued a payment to McCausland in the amount of $37,258.94 for past royalties plus 3.5% interest in lieu of checks from February 6, 2006 to October 11, 2010 inclusive. This payment included all monies owed to McCausland through October 11, 2010. The settlement check was promptly cashed by McCausland. (Schrecengost Affidavit, ¶ 11.)

By agreement of the parties, the Court appointed Schrecengost as payment agent under GPC No. 6078. As payment agent, Schrecengost has paid ongoing monthly royalties and working interest payments to all interested parties since October 11, 2010. All payments subsequent to October 11, 2010 have been accepted by all the parties, including McCausland. (Stipulation of Facts, ¶ 20; Schrecengost Affidavit, ¶¶ 12–15.)

Trial Court Opinion, 6/15/12, at 1–7 (emphasis and brackets in original).

On December 21, 2011, Ronald filed a motion for summary judgment seeking to have the trial court decide, as a matter of law, that the McCausland Lease should be declared null and void on the basis that Robert breached the McCausland Lease by withholding payment of royalties. Ronald submitted the motion on stipulated facts agreed to by the parties. The trial court held oral argument on Ronald's motion, and Robert made an oral motion for summary judgment in his favor. On June 18, 2012, the trial court entered a memorandum opinion and an order, dated June 15, 2012, denying Ronald's motion for summary judgment. The trial court held that the plain language of the McCausland Lease provides that Ronald could not recover monetary damages for breach of the McCausland Lease and at the same time seek a judicial declaration that the McCausland Lease is null and void, as the remedies are inconsistent. On July 3, 2012, Ronald filed a motion to amend or modify the trial court's order dated June 15, 2012. Also on July 3, 2012, the trial court entered an order that scheduled oral argument for July 23, 2012, on Ronald's motion to amend.

On July 23, 2012, the trial court amended its June 15, 2012 Order to clarify that Robert's oral motion for summary judgment was granted, and that the order granting Robert's motion for summary judgment and denying Ronald's motion for summary judgment was a final order. This appeal followed.

Ronald presents the following issue for our review:

1. WHETHER THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY, THE HONORABLE JAMES J. PANCHIK PRESIDING, ERRED WHEN IT DENIED APPEL-

LANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTED THAT OF APPELLEE?

Appellant's Brief at 4.

 Ronald argues that the trial court erred in granting summary judgment in favor of Robert. Ronald contends that he should be granted relief in the form of a declaration of breach of the McCausland Lease for Robert's failure to pay royalties for nearly five years. Ronald argues it is undisputed that Robert breached the McCausland Lease, but the trial court erred in finding Ronald's actions in accepting royalties resulted in the McCausland Lease continuing in full force and effect and that the settlement agreement preserved his cause of action in breach of contract.[2]

 In reviewing matters of summary judgment, we are governed by the following well-established principles:

> Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Chenot v. A.P. Green*

*Services, Inc.*, 895 A.2d 55, 60–61 (Pa.Super.2006) (citation omitted).

Motions for summary judgment implicate the plaintiff's proof of the elements of his cause of action. *Chenot*, 895 A.2d at 61 (citation omitted). Summary judgment is proper "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2(2). In other words, "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report," Pa.R.C.P. 1035.2(1), and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense. *Chenot*, 895 A.2d at 61.

When reviewing a grant of summary judgment, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. *Id.* We will dis-

---

**2.** To the extent Ronald now urges this Court to address a "theft of minerals" claim, we are constrained to conclude that such issue was not preserved for appellate review in Ronald's Pa.R.A.P. 1925(b) statement. Specifically, Ronald's Rule 1925(b) statement provides as follows:

> Whether the Trial Court erred in failing to enforce the terms of a settlement agreement, in the form of a consent order, negotiated by all parties and counsel regarding monies owed and payments to be made on unpaid royalties and profits that preserved Plaintiff's right to pursue a breach of the oil

and gas agreement specifically reading that Plaintiff/Appellant did not waive his breach claims?

Thus, Ronald's claim that he has a cause of action for theft of minerals is waived. *See Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306, 309 (1998) (holding that if an appellant is directed to file a concise statement of matters to be raised on appeal pursuant to Pa. R.A.P. 1925(b), any issues not raised in that statement are waived). *See also Hartdegen v. Berger*, 839 A.2d 1100, 1104 (Pa.Super.2003) (applying principles of *Lord* to civil case).

turb the trial court's order only upon an error of law or an abuse of discretion. "Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration." *Chenot*, 895 A.2d at 61 (citation omitted). Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law, exercises its discretion in a manner lacking reason, or does not follow legal procedure. *Id.* (citation omitted).

Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. *Chenot*, 895 A.2d at 61 (citation omitted). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused. *Id.* at 61–62 (citation omitted).

*Continental Casualty Company v. Pro Machine*, 916 A.2d 1111, 1115–1116 (Pa.Super.2007).

▮▮▮▮ Instantly, we are called upon to review the trial court's interpretation of the McCausland Lease. Thus, applicable to this lease dispute are the principles of contract and property law. *Jacobs v. CNG Transmission Corp.*, 332 F.Supp.2d 759, 772 (W.D.Pa.2004).[3]

[A]n oil and gas lease reflects a conveyance of property rights within a highly technical and well-developed industry, and thus certain aspects of property law as refined by and utilized within the industry are necessarily brought into play. [*Daset Mining Corp. v. Industrial Fuels Corp.*, 326 Pa.Super. 14, 473 A.2d 584, 592 (1984)]; [*Hutchison v. Sunbeam Coal*, 513 Pa. 192, 519 A.2d 385, 387 n. 1 (1986)] (using the term "lease" with regard to the conveyance of mineral rights "is in some respects a misnomer [because] what is really involved is a transfer of an interest in real estate, the mineral in place."). The Supreme Court has aptly observed that "the traditional oil and gas 'lease' is far from the simplest of property concepts." *Brown v. Haight*, 435 Pa. 12, 255 A.2d 508, 510 (Pa.1969). In the context of oil and gas leases, the title conveyed is inchoate and initially for the purpose of exploration and development. *Calhoon v. Neely*, 201 Pa. 97, 50 A. 967, 968 (Pa.1902); *accord Burgan v. South Penn Oil Co.*, 243 Pa. 128, 89 A. 823, 826 (Pa.1914) ("The title is inchoate, and for purposes of exploration only until oil is found."). If development during the primary term is unsuccessful, no estate vests in the lessee. *Id.* If oil or gas is produced, the right to produce becomes vested and the lessee has a property right to extract the oil or gas. [*Calhoon v. Neely*, 201 Pa. 97, 50 A. 967, 968 (1902)]; *Barnsdall v. Bradford Gas Co.*, 225 Pa. 338, 74 A. 207, 208 (Pa.1909) (an oil and gas lease that results in production "creates a corporeal interest in the lessee in the demised premises, and is not merely a license to enter and oper-

---

**3.** Although we are not bound by the holdings of any federal court except for the United States Supreme Court, we may find such decisions instructive. *See Stephens v. Paris Cleaners, Inc.*, 885 A.2d 59, 68 (Pa.Super.2005) (recognizing that federal district court cases are not binding on this court, but Pennsylvania appellate courts may utilize the analysis in those cases to the extent we find them persuasive).

ate for oil and gas."). In such circumstances the lessee will be protected in accordance with the terms of the lease and will be required to operate the leasehold for the benefit of both parties. [*Venture Oil Co. v. Fretts*, 152 Pa. 451, 25 A. 732, 734 (1893) ]; *Calhoon*, 50 A. at 968; *Burgan*, 89 A. at 826.

*Jacobs*, 332 F.Supp.2d at 772–773. Royalty-based leases are to be construed in a manner designed to promote the full and diligent development of the leasehold for the mutual benefit of both parties. *Id.* at 781.

 "[T]he object in interpreting instruments relating to oil and gas interests, like any written instrument, 'is to ascertain and effectuate the intention of the parties.'" *Szymanowski v. Brace*, 987 A.2d 717, 720 (Pa.Super.2009) (citation omitted).

In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Id.* at 722 (citation and emphasis omitted).

 To show a breach of contract, a party must establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Hart v. Arnold*, 884 A.2d 316, 332 (Pa.Super.2005). When performance of a duty under a contract is due, any nonperformance is a breach. *Widmer Engineering, Inc. v. Dufalla*, 837 A.2d 459, 467–468 (Pa.Super.2003). If a breach constitutes a material failure of performance, the non-breaching party is relieved from any obli-

gation to perform; thus, a party who has materially breached a contract may not insist upon performance of the contract by the non-breaching party. *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 599 Pa. 546, 962 A.2d 639, 648 (2009). Conversely, a party might breach the contract but still substantially perform its obligations under the agreement. *Cimina v. Bronich*, 517 Pa. 378, 537 A.2d 1355, 1358 (1988). In that case, the breach is deemed nonmaterial and the contract remains in effect. *Id.* The breaching party retains the right to enforce the contract and demand performance; the nonbreaching party has no right to suspend performance. *Widmer Engineering, Inc.*, 837 A.2d at 468.

Further, we are mindful that this Court has described the doctrine of election of remedies as follows:

An election of remedies has been defined as the act of choosing between two or more different and coexisting modes of procedure and relief allowed by law on the same state of facts. The phrase has also been used in a more restrictive sense to denote the doctrine that the adoption, by an unequivocal act, of one of two or more inconsistent remedial rights has the effect of precluding a resort to the others. The doctrine has frequently been regarded as an application of the law of estoppel, on the theory that a party cannot, in the assertion or prosecution of his rights, maintain inconsistent positions, and that where there is a choice of two remedies which proceed upon opposite and irreconcilable claims of right, the one taken must exclude and bar the prosecution of the other....

*Wedgewood Diner, Inc. v. Good*, 368 Pa.Super. 480, 534 A.2d 537, 538 (1987).

 Well-settled Pennsylvania law provides:

As a general rule a party may have as many remedies as the law gives but with

this qualification: that they be consistent. Ordinarily, a litigant may not, in the prosecution of his litigation, seek inconsistent remedies at the same time on the same cause of action. However, it must appear that the remedies sought to be enforced are inconsistent and not merely cumulative in order to have the selection of one remedy operate as a bar to the pursuit of the other or to compel the plaintiff to elect between remedies because of principles of election of remedies. Distinct remedies cannot be used concurrently or alternately unless they are consistent not only in purpose but in kind.

*Harper v. Quinlan*, 159 Pa.Super. 367, 48 A.2d 113, 115 (1946).

> In a breach of contract suit, the plaintiff **either** may rescind the contract and seek restitution **or** enforce the contract and recover damages based on expectation. In such a case, the inconsistent nature of those actions is obvious—one cannot attempt to terminate his contractual obligations and, at the same time, seek to enforce the contract and enjoy its full benefits in an action for breach.

*Smith v. Brink*, 385 Pa.Super. 597, 561 A.2d 1253, 1255 (1989) (emphasis in original). *See also Umbelina v. Adams*, 34 A.3d 151 (Pa.Super.2011) (explaining that a party cannot maintain at one time in separate counts of one action or in two separate suits, claims for rescission/restitution on one hand and damages for breach of contract on the same contract, as these remedies are essentially inconsistent).

 Moreover, it is well established that the party seeking to terminate an oil and gas lease bears the burden of proof. *T.W. Phillips Gas and Oil Co. v. Jedlicka,* 964 A.2d 13 (Pa.Super.2008). We observe it is an oft-stated maxim that the law abhors a forfeiture. *Jackson v. Richards 5 & 10, Inc.,* 289 Pa.Super. 445, 433 A.2d 888, 892 (1981). "A forfeiture clause is

enforceable, but only if it is expressed with clearness and certainty." *Kalina v. Eckert,* 345 Pa.Super. 220, 497 A.2d 1384, 1385 (1985). The trial court "must review the contract in its entirety, and a provision will not be construed to result in a forfeiture unless no other reasonable construction is possible." *Id.*

Over one century ago, in *Wheeling v. Phillips,* 10 Pa.Super. 634 (Pa.Super.1899), we addressed the forfeiture provisions of an oil lease. The lease in *Wheeling* contained the following language:

> The party of the second part covenants with the first party to commence operations for the said mining purposes within one year from the execution of this lease or thereafter pay the party of the first part twenty-five dollars per annum until work is commenced, to be paid annually, and after work is commenced it is to be prosecuted with due diligence until well shall be completed.... **The failure of the party of the second part to make any one of the payments when due will render this lease null and void, not binding on either party.**

*Id.* at 636–637 (emphasis added). In reviewing the above language, this Court stated the following:

> It has been many times decided that the clause voiding such a lease on failure to make the payments provided for, is for the benefit of the lessor. The lessee cannot take advantage of his own wrong by defaulting on his payments and base a cancellation of the lease on such default[.]

*Id.* at 637.

Thereafter in *Wheeling,* this Court set forth the following instructions with regard to the forfeiture language of the oil lease and the election of remedies available to the non-breaching party:

> In this view of the clause of forfeiture, it requires some act of the lessor to invoke

its provisions. Where there has been a default by the lessee mere silence or inaction on the part of the lessor will not render the lease void. **He may, on default made, demand and compel the payments. By doing so he elects to continue the lease.** Or he may on default made, notify the lessee that because thereof he declares a forfeiture. It is not necessary, in all cases, that a formal notice be given by the lessor. The making of a lease to another party after default by the original lessee is a declaration of forfeiture when done for that purpose[.] By such releasing the original lease becomes a nullity; the rights and liabilities arising from it are extinguished and the act of the lessor prevents him from demanding from the lessee the payment for which the lease stipulated in case of default in prosecuting the work[.] **The same authority holds that if the lessor had accepted the payment the "day after the right to declare a forfeiture was completely vested in him, such acceptance would have operated as a waiver of the right and would have protected the lessee as effectually as if the payment had been made or tendered the day before it so vested."**

The lessor waited some twelve years in silence and inaction. He then formally notified the lessee that he declared a forfeiture under the lease and that it was "null and void." In the same notice he demanded the back payments. If these were made, it would work a continuance of the lease. **The plaintiff cannot therefore insist upon the forfeiture and at the same time recover the payments,—the making of which would deprive him of the right to declare a forfeiture.** After the end of the first year, the lessee was in the power of the lessor as to payment or forfeiture. He might be compelled to pay the accrued amounts or lose his hold upon the leased premises. The lessor might either forfeit the contract or affirm its continuance as he chose[.] He finally concluded that he preferred to have again the control of his property that he might, as he says, lease it to others. He has so notified the lessee and has relieved him from the making of the back payments as he has deprived him of all rights under the lease. **To render a document an absolute nullity, by notice under its provisions, would seem to prevent any recovery upon any of its covenants. It is dead as a whole and there can be no reservation of vitality in certain of its parts.** It is to be observed that in this case there is no clause reserving the right to recover accrued payments after forfeiture[.]

*Id.* at 637–638 (emphasis added) (citations omitted).

■ With the above authority in mind, we now turn to the facts of the instant case. Our review of the record reflects that the McCausland Lease, dated February 4, 1964, was a "form lease," which consisted of a single page and contained the following provision:

It is further agreed that if gas is obtained in sufficient quantities and utilized, the consideration in full to [Ronald] shall be *1/16th part of the production* dollars for each and every well drilled on the premises herein described, per annum, payable within sixty days after completion of such well; and thereafter yearly, at *R.F.D. # 1, Rural Valley, Pa.* The well or wells to be located in the hollows, or at such [places] as not to interfere with the cultivated portions of the land, and all pipe lines to be buried two feet under ground; also, to pay all damages to growing crops by the laying of said pipe lines.

Complaint in Law and Equity, 7/27/09, at unnumbered first exhibit.

Thereafter, two paragraphs later, the following language is set forth in the "form lease":

> [Robert] shall have *18 months* from the date hereof to complete one well on the premises without paying rental or damages for failure to do so, and at the expiration of said term of _____ year, [Robert] shall have the right and option to continue this lease from year to year by paying to [Ronald] _____ per acres per annum, on the _____ day of _____ each year, at _____ until one well is completed on the above described premises, which shall release [Robert] from all payment of further rental during the term of this lease.

Complaint in Law and Equity, 7/27/09, at unnumbered first exhibit.

Immediately after the above language and three paragraphs after the provision addressing the payment of royalties, the following provision appears in the McCausland Lease, upon which Ronald relies in making his argument that the failure to pay timely royalties by Robert rendered the McCausland Lease null and void:

> It is further understood and agreed by and between the parties hereto that a **failure to make any one of such payments, or to complete one well on the premises, shall render this lease null and void,** and the same shall be fully ended and determined by and between the parties, and [Ronald] shall have no right, nor right of action in law and equity against [Robert] for the recovery of any rent, damages or otherwise thereafter.

*See* Complaint in Law and Equity, 7/27/09, at unnumbered first exhibit (emphasis added).

Our review of the record further reflects that the parties accepted the following stipulated facts:

16. On October 26, 2010, this Court issued an Order approving a settlement with respect to Equitable's interpleader Petition, pursuant to which [Robert], through Mr. Schrecengost, agreed to make all outstanding royalty payments to [Ronald] ..., as well as outstanding working interest payments to the working interest holders, plus interest at the rate of 3.5%, compounded monthly.

17. On December 21, 2010 the parties entered a Stipulated Order of Court and Settlement Agreement, which memorialized the terms of the settlement reached on October 26, 2010. ...

18. On January 6, 2011, pursuant to the October 26, 2010 Order of Court and the parties' Settlement Agreement, [Robert], through Mr. Schrecengost, issued a payment to [Ronald] in the amount of $37,258.94 for royalties and 3.5% interest for checks from February 6, 2006 to October 11, 2010 inclusive. This payment included all monies owed to [Ronald] through October 11, 2010.

19. By agreement of all parties, this Honorable Court appointed Mr. Schrecengost as payment agent under GPC Nos. 6078. As payment agent, Mr. Schrecengost has paid ongoing monthly royalties and working interest payments to all interested parties since October 11, 2010.

20. All payments subsequent to October 11, 2010 have been accepted by all parties, including [Ronald].

Stipulated Facts of the Parties, 2/9/12, at ¶¶ 16–20.

Accordingly, it is undisputed that the record, as set forth at the time of summary judgment, reflects Robert failed to initially make the appropriate royalty payments to Ronald. However, as the facts further illustrate, Ronald has since received all royalty payments that were due under the McCausland Lease. Pursuant to precedent, in so accepting the royalty payments, Ronald essentially deprived

himself of the right to declare a forfeiture of the McCausland Lease.[4]

Moreover, we conclude that the placement of the language of the forfeiture clause renders the McCausland Lease null and void **only** upon the failure to make rental payments, since such provision immediately follows the paragraph dealing with rental payments. There is no doubt that a clear reading of the McCausland Lease indicates that the forfeiture clause **only** relates to the payment of delay rentals or the failure to complete a well on the premises, and **not** the payment of royalties. As explained above, the forfeiture clause appears in the paragraph immediately following the delay rental clause. Based on the placement of the forfeiture clause, the phrase "such payments" refers to the payment of delay rental in the immediately preceding paragraph, and not to the payment of royalties, which is addressed in a provision of the McCausland Lease that appears several paragraphs before the forfeiture clause.

Further, we must observe that Ronald admitted in his appellate brief filed with this Court that he was unable to find Pennsylvania case law wherein the lessor sought to enforce a forfeiture provision after a well was completed on the premises and minerals were being produced. Appellant's Brief at 11. Specifically, Ronald stated, "[m]ost if not all [of the cases] deal with delay rental not royalty." *Id.* Indeed, our review of case law reflects that forfeiture clauses in oil and gas leases have been applied to the failure to complete a well on the premises or to pay delay rentals during the initial term of the lease. *See e.g. Bertani v. Beck,* 330 Pa.Super. 248, 479 A.2d 534 (1984) (addressing a delay rental clause in an oil and gas lease as vesting in the lessee the option to pay an annual delay rental or forfeit the right to develop the premises); *Craig v. Cosgrove,* 277 Pa. 580, 121 A. 406 (1923) (addressing forfeiture clause for nonpayment of rent or for failure to fulfill a covenant for drilling wells in an oil and gas lease); *Wolf v. Guffey,* 161 Pa. 276, 28 A. 1117 (1894) (addressing forfeiture clause of lease for failure to complete well or make rental payment); *Scilly v. Bramer,* 170 Pa.Super. 276, 85 A.2d 592 (1952) (addressing forfeiture clause as enforceable for failure to develop portion of premises)

As the court in *Jacobs* aptly observed:

The lease forms used early on in the development of the industry contained an expressed obligation for the lessee to develop the property or suffer a forfeiture.... The industry eventually developed a lease that obligates the lessee to develop the land for production or pay a rental for delay, which became known as a "drill or pay lease." Early forms of these leases then began to include a surrender clause, and commonly were referred to as a lease containing a drill or pay or surrender option.

*Jacobs,* 332 F.Supp.2d at 767 n. 3 (citations omitted).

It is with this understanding that we conclude the oil and gas industry practice of including a forfeiture clause was to guarantee that the lessee would develop the property and, if the lessee failed to do so, the lessor could declare a forfeiture. Hence, it impedes logic to ascertain that the industry would develop a lease that allows a lessor to declare a forfeiture for failure to make a royalty payment after a well has been completed and oil or gas is being produced. Thus, it is our determi-

---

**4.** We also note, as did the trial court, that Ronald disregards the portion of the forfeiture paragraph which "unequivocally states that [Ronald] shall have no right of action in law and equity against [Robert] for the recovery of any damages." Trial Court Opinion, 6/15/12, at 9 n. 1.

nation that forfeiture clauses in oil and gas leases customarily applied to the failure to complete a well or to pay delay rentals during the initial term of the lease, as is clearly expressed in the McCausland Lease. We are constrained to conclude that Ronald's contrary argument, that the forfeiture clause in the McCausland Lease applies to the provision addressing royalty payments, lacks merit. Therefore, we hold that the trial court neither committed an error of law nor abused its discretion in granting Robert's motion for summary judgment.

Order affirmed.