J-A01023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PENNSYLVANIA GENERAL ENERGY COMPANY, L.L.C., A PENNSYLVANIA LIMITED LIABILITY COMPANY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MELVIN B. HERSHEY, | |
| Appellant | No. 908 WDA 2016 |

Appeal from the Order Entered June 1, 2016
In the Court of Common Pleas of Potter County
Civil Division at No(s): 2015-135

BEFORE:  BOWES, OLSON and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                          **FILED FEBRUARY 13, 2017**

Appellant, Melvin B. Hershey, appeals from the order entered on June 1, 2016.  The subject order granted the motion for judgment on the pleadings, which was filed by Pennsylvania General Energy Company, L.L.C. (hereinafter "PGE").  The order also entered judgment in PGE's favor, and against Appellant, in the amount of $238,551.19, plus interest.  We affirm.

PGE instituted the current action on May 8, 2015, by filing a complaint against Appellant.  According to the complaint, PGE is "involved in oil and gas operations" and, on October 25, 2014, Appellant "advised a representative of PGE . . . that he owned an undivided one-half interest in oil and gas rights in Potter County[, Pennsylvania] that he would be interested in leasing to PGE."  PGE Complaint, 5/8/15, at ¶¶ 1 and 3.  On November 1,

---

*Retired Senior Judge assigned to the Superior Court.

2014, Appellant signed an Oil and Gas Lease (hereinafter "Oil and Gas Lease" or "the Lease") "covering tracts of land totaling 243.52 acres in Bingham Township, Potter County. . . . The[] premises are the same that were identified by [Appellant] as belonging to him on October 25, 2014." *Id.* at ¶¶ 4-5. Under the terms of the Lease, Appellant "specially warranted the leased premises, agreed to defend title to the leased premises, and covenanted that PGE would have quiet enjoyment under the lease." *Id.* at ¶ 6 (some internal capitalization omitted).

Also on November 1, 2014, Appellant signed an "Order of Payment," which declared that Appellant "was to receive $243,520.00 for a [one-half] interest in the leased premises, which was identified as being a net of 121.76 acres." *Id.* at ¶ 7 (some internal capitalization omitted). The Order of Payment "provided that if PGE determined by record title search that [Appellant's] interest in the leased premises was either greater or less than 121.76 acres, the payment might be proportionally increased or reduced by PGE to reflect the correct interest." *Id.* at ¶ 8 (some internal capitalization omitted).

On February 19, 2015, PGE issued Appellant two checks, totaling $243,520.00, for Appellant's professed interest in the land. *Id.* at ¶ 9. PGE issued the checks before PGE received a title opinion on the land "[b]ased on [Appellant's] representations to PGE that he owned the undivided interest in the oil and gas underlying the leased premises." *Id.* at ¶ 10 (some internal capitalization omitted). Appellant then cashed the checks. *Id.* at ¶ 11.

On March 5, 2015, PGE received a title opinion from its attorney; as the opinion revealed, essentially "the entire oil and gas estate . . . was held by Melvin A. Yoder and Rosa D. Yoder, not [Appellant]." *Id.* at ¶ 12. Subsequent research revealed that, of the "undivided one-half interest in [243.52 acres of] oil and gas rights in Potter County" that Appellant originally claimed to own, Appellant only "had good title to 5.019 acres of oil and gas rights." *Id.* at ¶ 21. Therefore, by letter dated March 10, 2015, "PGE notified [Appellant] of the title failure and demanded reimbursement pursuant to the terms of the parties['] lease, informing [Appellant] that while he had good title to 5.019 acres of oil and gas rights . . . and therefore was entitled to $4,968.81 pursuant to the lease, the title failure on the remaining acreage required him to return $238,551.19." *Id.* (some internal capitalization omitted). Appellant refused to remit the payment and PGE filed its three-count complaint against Appellant, claiming damages for unjust enrichment, "breach of warranty of title and covenant[] of quiet enjoyment," and breach of contract. *Id.* at ¶¶ 24-44.

PGE attached to the complaint: evidence of two checks issued to Appellant by PGE, that were dated February 19, 2015, and in the total amount of $243,520.00; the relevant deeds demonstrating that Appellant only "had good title to 5.019 acres of oil and gas rights" in the land; a letter from PGE to Appellant, dated April 6, 2015; the Oil and Gas Lease; an Addendum to the Lease; and, the Order of Payment. We will quote the

- 3 -

relevant portions of the April 6, 2015 letter, the Oil and Gas Lease, and the Order of Payment.

The April 6, 2015 letter from PGE to Appellant reads:

April 6, 2015

. . .

RE: Lease Agreement with [PGE] dated November 1, 2014

Dear Mr. Hershey:

I am writing in follow up to my letter of March 10. I spoke to your daughter, Connie, about this matter and understood that you were intending to seek the advice of counsel. I called Connie last week to obtain an update, and she has not returned my call. PGE has not received reimbursement or other communication from you regarding the amount that was erroneously paid to you. I can only assume that you are not intending to return the $238,551.19 representing payment for oil and gas that you do not own. Please be advised that if PGE does not receive a check payable to [PGE] in the amount of $238,551.19 within 10 days, we will pursue legal avenues to obtain repayment of the amounts to which you are not entitled.

Sincerely yours,

Pennsylvania General Electric Company, LLC

/s_____
Lisa C. McManus, Esq.
Vice President – Legal & General Counsel

Letter from PGE to Appellant, dated 4/6/15, at 1 (internal bolding omitted).

The Oil and Gas Lease provides, in relevant part:

OIL AND GAS LEASE

THIS AGREEMENT (the "Lease") is made this 1st day of November, 2014, between Melvin B. Hershey, a widower . . . Lessor . . . , and [PGE], Lessee.

**WITNESSETH:**

**1. LEASING CLAUSE** – For and in consideration of the sum of [$10.00] and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and the covenants contained in this Lease, Lessor hereby grants, leases, and lets exclusively to Lessee all those certain lands situate in Bingham Township(s), Potter County, Commonwealth of Pennsylvania, (the "Leased Premises"), further described as follows: Tax Map #'s . . . and containing a total of 243.52 acres, more or less, for the purpose of exploring for, developing, producing, transporting, and marketing oil, gas and/or their constituents . . . together with such exclusive rights as may be necessary or convenient for Lessee, at its election, to explore for, develop, produce, measure, and market production from the Leased Premises and from any other lands . . .

**2. TERM OF LEASE**.  This lease shall be in force for a primary term of five [] years from 11-1-2014 (the "Effective Date"), and for as long thereafter as oil and gas, or either of them, or other substances covered by this Lease are produced in paying quantities from the Leased Premises or from lands pooled with the Leased Premises, or this Lease is otherwise maintained in effect pursuant to its provisions.

**3. PAYMENTS TO LESSOR** – Lessee covenants to pay Lessor, proportionate to Lessor's percentage of ownership, as follows:

**(A) DELAY RENTAL:** . . .

**(B) ROYALTY:** To pay Lessor as Royalty an amount equal to 12.5 of the gross proceeds realized by Lessee for all oil, gas and/or their constituents produced and marketed from the Leased Premises. . . .

. . .

**(G) TITLE:** If Lessee receives evidence that Lessor does not have title to all or any part of the rights herein leased, Lessee may immediately withhold payments that would be otherwise due and payable hereunder to Lessor until the adverse claim is fully resolved.

. . .

**8. TITLE AND INTERESTS** – Lessor hereby ~~generally~~ **specially** warrants and agrees to defend title to the Leased Premises. Lessor covenants that Lessee shall have quiet enjoyment hereunder. Should any person having title to the Leased Premises fail to execute this Lease, the Lease shall nevertheless be binding upon all persons who do execute it as Lessor.

. . .

**17. SURRENDER** – Lessee may surrender and cancel this Lease as to all or any part of the Leased Premises by recording a Surrender of Lease, and if a partial surrender the Delay Rental set forth in Paragraph three [] of this lease shall be reduced in proportion to the acreage surrendered.

. . .

**21. ENTIRE CONTRACT** – The entire agreement between Lessor and Lessee is embodied herein. No oral warranties, representations, or promises have been made or relied upon by either party as an inducement to or modification of this Lease. . . .

Intending to be legally bound, Lessor hereunto sets hand and seal.

Lessor:

/s_____
Melvin B. Hershey

. . .

Approved by Lessee:

- 6 -

/s_____
Robert L. Dean, III
Vice President – Land

Oil and Gas Lease between Appellant and PGE, 11/1/14, at 1-4 (some bolding omitted) (bolding and strikethrough in original).

The Order of Payment declares:

**ORDER OF PAYMENT – PAID UP LEASE**

Conditioned on approval of the agreement associated herewith and on approval of title to same, Lessee will make payment as indicated herein by check within 60 business days of receipt of the agreement by Lessee at Lessee's business office address noted above. No default shall be declared for failure to make payment until 30 days after receipt of written notice from payee of intention to declare such default.

. . .

Pay To:              Melvin B. Hershey

The amount of:       [$243,520.00]

. . .

Consideration for 50% of 243.52 acres interest in Oil and Gas Lease dated 11/1/14 covering 121.76 net acres in the Twp/Dist(s) Bingham, County of Potter, State of Pennsylvania, and further described as: Tax Map Nos. . . .

In the event Lessee determines by record title search that payee's interest in the leased premises is either greater or less than stated above, this payment may be proportionally increased or reduced by Lessee to reflect the correct interest. In such event, payee shall be furnished copies of pertinent instruments evidencing the correct interest.

The undersigned payee acknowledges that the said payment constitutes payment in full for the initial consideration for

the lease and for all delay rentals due for years 2 through 5 of the lease.

. . .

Landowner(s)

/s_____
Melvin B. Hershey

Date Signed:  11-1-2014

Completed By:  Chris Flatt_____

Approved By:  /s_____
                        Robert L. Dean, III
                        Vice President - Land

Order of Payment, dated 11/1/14, at 1 (some internal bolding omitted).[1]

On July 30, 2015, Appellant filed an answer and new matter.  As is relevant to the current appeal, within Appellant's answer, Appellant: admitted that he signed the Oil and Gas Lease "covering tracts of land totaling 243.52 acres in Bingham Township, Potter County;" admitted that he signed the Order of Payment; admitted that he cashed the checks that were issued by PGE, in the total amount of $243,520.00; and, admitted that he "has not refunded the amount claimed by PGE."  Appellant's Answer and New Matter, 7/30/15, at ¶¶ 5, 7, 9, 11, and 24.  Appellant also averred that: "[a]t all material times, [Appellant] made it clear and any and all representatives of PGE reinforced the understanding that PGE would

_____

[1] We will not restate the terms of the Addendum, as the Addendum is irrelevant to the current appeal.

- 8 -

independently search the title and determine for itself the ownership interest, if any, of [Appellant]" in the land; "[Appellant] was told by representatives of PGE that PGE would first determine title and only if it was satisfied with the title would payment be made to [Appellant];" and, "[a]t all material times, PGE voluntarily made the payments [] to [Appellant] and did so at its own risk and responsibility and with the express understanding that [Appellant] would not be required to account for any such monies and that such monies received by [Appellant] were to be [Appellant's] monies without further responsibility on the part of [Appellant] to PGE." *Id.* at ¶¶ 3, 5, and 10.

Further, Appellant answered that he was "without information sufficient to determine the truth or falsity" of PGE's averments that Melvin A. Yoder and Rosa D. Yoder owned the bulk of the claimed 243.52 acres in Bingham Township, Potter County and that Appellant only owned a 5.019 acre parcel of land. *Id.* at ¶¶ 12 and 21. Finally, Appellant denied that he "has any duty to . . . refund[] the amount claimed by PGE" and Appellant denied that PGE was entitled to relief on any of their claims. *Id.* at ¶¶ 24 and 27-44.

On August 25, 2015, PGE filed a motion for judgment on the pleadings. Within PGE's brief in support of its motion for judgment on the pleadings, PGE claimed that it was entitled to judgment in its favor because, under the terms of the Oil and Gas Lease, Appellant specially warranted title to the Leased Premises and, yet, Appellant did not have title to the vast

majority of the premises. PGE's Brief in Support, 8/25/15, at 13. According to PGE, Appellant's breach of the warranty of title permits PGE to recover the money it paid to Appellant. *Id.* at 14. Further, PGE claimed, Appellant "breached his agreement in the Order of Payment that provided that PGE could proportionally reduce the amount owing to [Appellant] if PGE determined that [Appellant] did not own all the rights that he claimed." *Id.* at 16.[2]

Appellant answered PGE's motion and claimed that PGE was not entitled to judgment in its favor because: PGE drafted the documents and, within the documents, PGE did not explicitly declare that it had the right to a refund of its payment in the event the lessor did not own the Leased Premises; the special warranty provision in the Lease does not provide PGE with an avenue for relief because "PGE has not alleged in its complaint that any hostile claimant has appeared to evict PGE and has not alleged any facts that PGE has purchased or leased any interest from such hostile third party claimant;" PGE's only remedy is to "surrender and cancel the Lease;" PGE had "the exclusive duty to ascertain title" to the oil and gas and PGE's payment to Appellant, without PGE's full knowledge of the facts, constituted

---

[2] In PGE's brief in support of its motion for judgment on the pleadings, PGE declared that it was not moving for judgment on the pleadings with respect to its unjust enrichment claim, as "unjust enrichment is an equitable theory that necessarily involves a weighing of the equities as to the parties." PGE's Brief in Support, 8/25/15, at 13 n.3.

a "voluntary" payment that it is not entitled to recoup; PGE's unjust enrichment claim lacks merit because PGE had the duty to determine title and failed to do so and because PGE "made the payment to [Appellant] in a totally voluntary manner;" and, "public policy precludes equity from granting PGE relief" because "no oil and gas company in the Commonwealth of Pennsylvania . . . has ever asked a court to force a property owner to pay back the 'sign up' money." Appellant's Answer to PGE's Motion for Judgment on the Pleadings, 11/24/15, at 7, 9, 10, 12, 17, and 21-22. Moreover, Appellant claimed that the trial court should enter judgment on the pleadings in his favor because "the language of the Lease and most especially the language of the Order of Payment expressly placed an affirmative duty on PGE to make a diligent, searching and full title search . . . before it approved the Lease and before it issued the payment." *Id.* at 25-26. Appellant argued that, since PGE made the payment, "PGE cannot be heard to complain that it did not fulfill the duty which it chose to assume by drafting the documents the way it drafted them." *Id.* at 26.

On June 1, 2016, following oral argument, the trial court granted PGE's motion for judgment on the pleadings and entered judgment on behalf of PGE and against Appellant, in the amount of $238,551.19, plus interest. Trial Court Order, 6/1/16, at 1. Appellant filed a timely notice of appeal and now raises four claims to this Court:

> [1.] Did the failure of PGE to complete a record title search prior to its claimed approval of the Lease and its voluntary payment to [Appellant] constitute a failure by PGE to

- 11 -

properly accept the offer of [Appellant] such that the Lease never became operative which meant that the trial court erred in granting judgment in favor of PGE?

[2.] Alternatively to question [one] above, and assuming *arguendo* that PGE accepted the offer by [Appellant], did said failures by PGE, as above described, place PGE in material breach of its duties, conditions and conditions precedent such that the trial court erred in granting judgment to PGE and thus, violated the rule that a party that has breached a contract may not insist upon performance by [Appellant] the non-breaching party?

[3.] Do the failures of PGE, as above described, and the pleadings as a whole show that PGE does not have any cause of action against [Appellant] and thus, the trial court erred when it failed to grant judgment against PGE and in favor of [Appellant]?

[4.] Alternatively, did the trial court err in not providing [Appellant] with an opportunity to file amended responsive pleadings when it granted judgment to PGE on the motion for judgment on the pleadings filed by PGE?

Appellant's Brief at 3 (some internal capitalization omitted).

We have stated:

Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.

Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly

- 12 -

attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Rourke v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 116 A.3d 87, 92 (Pa. Super. 2015) (some internal quotations and citations omitted).

"The object in interpreting instruments relating to oil and gas interests, like any written instrument, is to ascertain and effectuate the intention of the parties." *Szymanowski v. Brace*, 987 A.2d 717, 720 (Pa. Super. 2009) (internal citations and quotations omitted). Our Supreme Court has held:

The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its content alone.

Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not reviewed in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.

- 13 -

*Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429-430 (Pa. 2001) (internal quotations and citations omitted). Moreover, "[i]t has long been accepted in contract law that an ambiguous written instrument presents a question of fact for resolution by the finder-of-fact, whereas the meaning of an unambiguous written instrument presents a question of law for resolution by the court." *Cmty. Coll. of Beaver County v. Cmty. Coll. of Beaver County, Soc. of the Faculty (PSEA/NEA)*, 375 A.2d 1267, 1275 (Pa. 1977).

Appellant first claims that "the Lease never became operative" and that the trial court thus erred in granting judgment in favor of PGE. Specifically, Appellant claims, PGE did not properly accept Appellant's offer to lease his property because PGE failed "to complete a record title search prior to its claimed approval of the Lease" and PGE "voluntarily" tendered payment to Appellant. Appellant's Brief at 16-23. Appellant writes:

> PGE drafted and presented to [Appellant] three documents which were the Lease, the Addendum[,] and the Order of Payment. When [Appellant] signed them, these three documents collectively constituted an offer by [Appellant,] which invited the acceptance of PGE. The Order of Payment specifically and exclusively controlled the manner, means[,] and mode by which a proper acceptance could take place. PGE did not properly accept the offer because it failed to perform required conditions. PGE failed to conduct a record title search of the oil and gas rights and failed to ascertain the "correct" title ownership of [Appellant]. Thus, the contract was never formed and the Lease never became operative before PGE made a voluntary payment to [Appellant] for which it has no legal basis to seek reimbursement.

Appellant's Brief at 9.

Appellant's claim fails. Indeed, this Court rejected a substantively identical argument in ***Cardinale v. R.E. Gas Dev., LLC***, 74 A.3d 136 (Pa. Super. 2013). In the ***Cardinale*** case, Lucinda A. Cardinale ("Cardinale") and Iola Hugney ("Hugney") filed a class action complaint against R.E. Gas Development, LLC ("R.E. Gas") and Rex Energy Corporation ("Rex Energy") (hereinafter, collectively, "the defendants"), on behalf of themselves and on behalf of all those similarly situated. Within their complaint, Cardinale and Hugney claimed that, in 2008, the defendants entered into Marcellus Shale oil and gas leases with a number of individuals in Pennsylvania, including with Cardinale and Hugney.

Cardinale and Hugney claimed that they signed the oil and gas lease, an addendum, and an order for payment, and then delivered the executed documents either to R.E. Gas or to R.E. Gas' agent and landman, Western Land Services, Inc. R.E. Gas then "executed and accepted" the documents from Cardinale on July 23, 2008 and from Hugney on August 6, 2008. Cardinale and Hugney claimed:

> Under the terms of [] Cardinale's Oil and Gas Lease, R.E. Gas had to pay [] Cardinale $105,875.00 within [60] banking days of its receipt of [] Cardinale's order for payment and executed oil and gas lease, which occurred on or shortly after July 23, 2008. R.E. Gas's obligation to pay was subject only "to its inspection, approval of the surface, geology and title" of the leased premises.
>
> Under the terms of [] Hugney's Oil and Gas Lease, R.E. Gas had to pay [] Hugney $71,925.00 within [60] banking days

of its receipt of [] Hugney's order for payment and executed oil and gas lease, which occurred on or shortly after August 6, 2008. R.E. Gas's obligation to pay was subject only "to its inspection, approval of the surface, geology and title" of the leased premises.

Cardinale and Hugney Complaint, 10/25/11, at ¶¶ 25-26 (paragraph numbering omitted).

According to the complaint, after the 60-day time period expired, the defendants "den[ied] that any contract or lease interest exist[ed] between [the defendants and Cardinale, Hugney,] or those similarly situated to [Cardinale and Hugney]" and the defendants failed to pay the bonuses or rents due to the landowners. *Id.* at ¶¶ 28-29. The Cardinale and Hugney Complaint contained three counts: breach of contract against R.E. Gas; tortious interference with contract against Rex Energy; and, civil conspiracy against both defendants.

In relevant part, the oil and gas lease between Hugney and R.E. Gas read as follows:

**OIL AND GAS LEASE**
**(PAID UP)**

Project: Skywalker III
THIS AGREEMENT is made as of the 6th day of UNDERLINE_AUGUST, 2008, by and between Iola Hugney . . . as Lessor, and R.E. Gas Development, LLC, . . . as Lessee.

1. Lessor, for and in consideration of One Dollar ($1.00), and other good and valuable consideration, the receipt of which is hereby acknowledged, and the covenants and agreements of the Lessee hereinafter contained, does hereby grant, lease and let unto Lessee the land described below, including all interests therein Lessor may acquire by operation of law, reversion or otherwise, (herein called the

- 16 -

"Leasehold Estate"), exclusively, for the purposes of exploring by geophysical and other methods, drilling, operating for and producing oil and/or gas from any strata and any depth . . . together with all rights, privileges and easements . . . useful or convenient in connection with the foregoing and in connection with treating, storing, caring for, transporting and removing oil and/or gas produced from the Leasehold Estate. . . .

2. It is agreed that this lease shall remain in force for a primary term of **five (5)** years from the date of this lease, and as long thereafter as operations are conducted upon the Leasehold Estate or on lands pooled or unitized therewith with no cessation for more than 90 consecutive days. . . .

3. Within sixty (60) days from the date of execution of this lease, Lessee agrees to pay to the Lessor the sum of [**$71,925.00**] as full and complete bonus payment for this lease for the entire primary term of this lease. This is a paid-up lease and no delay rentals shall be due. The bonus paid hereunder is consideration for this lease and shall not be allocated as mere rental for a period.

4. Lessee covenants and agrees to pay the following royalties: [stating the computation of royalties]. . . .

. . .

/s_____
Iola Hugney

. . .

This instrument was prepared by Timothy J. Kotzman, agent for R.E. Gas Development LLC. . .

Oil and Gas Lease between Hugney and R.E. Gas, 8/6/08, at 1-4.

The order for payment then declared:

**ORDER FOR PAYMENT**

Lessee shall, subject to its inspection, approval of the surface, geology and title, make payment to Lessor as

- 17 -

indicated herein by check within 60 banking days of Lessee's receipt of this Order For Payment and the executed Oil and Gas Lease associated herewith. No default shall be declared for failure to make payment until 20 days after written notice from Lessor of intention to declare such default. . . .

For collection, the original copy herein must be submitted directly to Lessee at the address below along with an executed original Oil and Gas Lease.

PAYEE (Lessor):                  <u>Iola Hugney</u>

Address:                      . . .

Phone:                        . . .

The amount of:              ($<u>71,925.00</u>) Dollars

This payment represents full consideration for a <u>Five (5)</u> year paid-up Oil and Gas Lease dated <u>August 6</u>, 2008 covering the following described lands: [stating a description of the land].

. . .

Issued on behalf of Lessee by:

<u>/s                            </u>
Timothy J. Kotzman, Agent


R.E. Gas Development LLC

. . .

This Order for Payment expires one year from date of issuance, unless paid sooner, terminated or replaced by Lessee.

. . .

Order for Payment, 8/6/08, at 1.

The defendants filed preliminary objections to the Cardinale and Hugney Complaint. As this Court explained, within their preliminary objections, the defendants claimed that "the parties never entered into a binding lease/contract" because the following, highlighted language in the "Order for Payment" created a condition precedent to contract formation:

> Lessee[, *i.e.*, R.E. Gas,] shall, **subject to its inspection, approval of the surface, geology and title,** make payment to Lessor[, *i.e.*, the Cardinale and Hugney plaintiffs] as indicated herein by check within 60 days of Lessee's receipt of this Order For Payment and the executed Oil and Gas Lease associated herewith.

*Cardinale*, 74 A.3d at 139 (emphasis in original).

The defendants claimed that:

> the provision of the Proposed Leases and the Orders for Payment was merely an invitation to bargain on the part of R.E. Gas. Then [the Cardinale and Hugney plaintiffs], by signing and returning the Proposed Leases and Orders for Payment, made offers to R.E. Gas to enter into the Proposed Leases and Orders for Payment under the terms and conditions contained in those documents.

*Cardinale*, 74 A.3d at 138-139.

According to the defendants in *Cardinale*, since R.E. Gas "explicitly rejected [the Cardinale and Hugney plaintiffs'] offers in Rejection Letters . . . no contracts that include Bonus Payments were ever formed." *Id.*

The trial court sustained the defendants' preliminary objections and dismissed the Cardinale and Hugney Complaint. Cardinale and Hugney filed a notice of appeal and we vacated the trial court's order. Within this Court's

- 19 -

opinion, we held that the trial court erred when it concluded that "the parties never entered into contracts/leases." *Id.* at 140.

The *Cardinale* Court held: "the language utilized in the lease agreement documents strongly indicates that the parties manifested an intent to be bound by the terms of the documents[;] that the terms of the documents were sufficiently definite[, and,] that consideration existed." *Cardinale*, 74 A.3d at 141. Further, we held that "[n]o language contained in the 'Order for Payment' alter[ed] [our] conclusion" that a valid contract between the Cardinale and Hugney plaintiffs and R.E. Gas existed. *Id.* First, we cited to the following language in the Order for Payment:

> Lessee[, *i.e.*, R.E. Gas,] shall, subject to its inspection, approval of the surface, geology and title, make payment to Lessor[, *i.e.* Hugney,] as indicated herein by check within 60 banking days of Lessee's receipt of this Order For Payment and the executed Oil and Gas Lease associated herewith.

Hugney's Order for Payment, 8/6/08, at 1; *see also Cardinale*, 74 A.3d at 141.

On appeal in *Cardinale*, the defendants claimed that the above language "created a condition precedent to the formation of an agreement." *Cardinale*, 74 A.3d at 141. We disagreed with the defendants and held:

> The conditional language in the "Order for Payment" does not directly relate to the existence of an agreement between R.E. Gas and [Hugney]. Rather, the language deals with R.E. Gas's duty of performance. R.E. Gas is required to perform by paying [Hugney] as indicated in the "Order for Payment," subject to the conditions stated therein. Consequently, this provision in the "Order for

Payment" does not render the parties' lease agreements invalid.

***Id.*** at 141-142.

In the case at bar, Appellant repeats the very argument that this Court rejected in ***Cardinale***. In particular, as in ***Cardinale***, Appellant claims that no contract was ever formed because the lessee did not properly accept the landowner's offer. ***See*** Appellant's Brief at 22; ***Cardinale***, 74 A.3d at 139. Further, as was also true in ***Cardinale***, Appellant claims that the terms in the Order of Payment "created a condition precedent to the formation of an agreement." ***See*** Appellant's Brief at 17; ***Cardinale***, 74 A.3d at 138-139. In this case, Appellant claims that, since PGE "failed to conduct a record title search of the oil and gas rights," as required under the Order of Payment, PGE "did not properly accept [Appellant's] offer" to lease the land. Appellant's Brief at 9 and 20. Our reasoning in ***Cardinale*** applies to the argument Appellant currently brings to this Court. Thus, we paraphrase ***Cardinale*** and hold, as to Appellant:

> the language utilized in the lease agreement documents [] indicates that [PGE and Appellant] manifested an intent to be bound by the terms of the documents[;] that the terms of the documents were sufficiently definite[, and,] that consideration existed. . . . No language contained in the "Order [of] Payment" alters this conclusion.
>
> . . .
>
> The conditional language in the "Order [of] Payment" does not directly relate to the existence of an agreement between [PGE and Appellant]. Rather, the language deals with [PGE's] duty of performance. [PGE] is required to perform by paying [Appellant] as indicated in the "Order

- 21 -

[of] Payment," subject to the conditions stated therein. Consequently, this provision in the "Order [of] Payment" does not render the parties' lease agreements invalid.

*Cardinale*, 74 A.3d at 141-142.

Appellant's claim on appeal thus fails.

Second, Appellant claims that, even if a contract existed between PGE and Appellant, PGE breached the contract by failing to "do a title search and [] ascertain the percentage ownership of [Appellant] prior to making any payment." Appellant's Brief at 30. Appellant claims that, since PGE breached the contract, "it cannot now try to sue the non-breaching party, [Appellant], when the very act which gives rise to the claim and to the existence of the lessor and lessee relationship was inexorably connected to that which PGE failed to do." *Id.* (internal capitalization omitted). This claim fails.

Again, the Order of Payment declares:

> Conditioned on approval of the agreement associated herewith and on approval of title to same, Lessee will make payment as indicated herein by check within 60 business days of receipt of the agreement by Lessee at Lessee's business office address noted above. No default shall be declared for failure to make payment until 30 days after receipt of written notice from payee of intention to declare such default.
>
> . . .
>
> In the event Lessee determines by record title search that payee's interest in the leased premises is either greater or less than stated above, this payment may be proportionally increased or reduced by Lessee to reflect the correct interest. In such event, payee shall be furnished copies of pertinent instruments evidencing the correct interest.

Order of Payment, dated 11/1/14, at 1 (some internal bolding omitted).

According to Appellant, the above language constitutes "a promise and covenant" on PGE's part, that PGE would "perform a title search before it made payment." Appellant's Brief at 30. Appellant claims that PGE breached this duty and, as a result of the breach, PGE "may not insist on performance of the contract by the non-breaching party." *Id.* at 25, *quoting* **McCausland v. Wagner**, 78 A.3d 1093, 1101 (Pa. Super. 2013).

To establish a breach of contract, a party must establish: "(1) the existence of a contract, including its essential terms[;] (2) a breach of a duty imposed by the contract[; and,] resultant damages." **Hart v. Arnold**, 884 A.2d 316, 332 (Pa. Super. 2005).

Appellant's claim on appeal fails because PGE did not have a "duty" to Appellant to perform the title search. Rather, the provision regarding the title search constituted a contractual **condition** on PGE's duty to pay Appellant the contractual bonus. **See** Restatement (Second) of Contracts § 224 ("[a] condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due"). Indeed, the provision explicitly declared that payment of the bonus was "conditioned on . . . [PGE's] approval of title to" the property. Order of Payment, dated 11/1/14, at 1. Thus, the provision declared that, prior to payment, PGE was entitled to "approv[e] title" to its own satisfaction. Simply stated, PGE's failure to approve title prior to payment

- 23 -

did not "breach" any "duty" PGE owed to Appellant. Appellant's claim to the contrary fails.

Third, Appellant claims that PGE "failed to state a cause of action under Count 1 of the complaint (Unjust Enrichment)" since: "it made a voluntary payment to [Appellant]" and "unfairly sought to shift attention to the daughter of [Appellant and] drafted the Order of Payment which created an extended period of time for it to properly act." Appellant's Brief at 34-49. This claim immediately fails because PGE did not move for judgment on the pleadings with respect to its unjust enrichment claim – and the trial court did not grant PGE's motion on such a claim. *See* PGE's Brief in Support of Motion for Judgment on the Pleadings, 8/25/15, at 13 n.3 (PGE declared that it was not moving for judgment on the pleadings on its unjust enrichment claim, as "unjust enrichment is an equitable theory that necessarily involves a weighing of the equities as to the parties"); Trial Court Opinion, 6/1/16, at 3-4 ("[a] title search[] showed [Appellant] did not in fact own the oil, gas, and mineral rights to a substantial amount of the leased premises and that he himself had previously conveyed his interest. This is a clear breach of the terms of the lease by [Appellant]").

Finally, Appellant claims that the trial court erred in granting PGE judgment on the pleadings without providing him with an opportunity to amend his pleadings. This claim fails because Appellant did not request that the trial court provide him with leave to amend and Appellant did not file an amended pleading on his own behalf. Pa.R.A.P. 302(a) ("[i]ssues not raised

in the lower court are waived and cannot be raised for the first time on appeal"); **Capobianchi v. BIC Corp.**, 666 A.2d 344, 346 (Pa. Super. 1995) ("[p]leadings may be amended at the discretion of the trial court after pleadings are closed, while a motion for judgment on the pleadings is pending, at trial, after judgment, or after an award has been made and an appeal taken therefrom") (internal quotations and citations omitted).

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/2017